Good morning. May it please the Court, my name is Amy Davis, and I have been asked by the Court to serve as amicus counsel on behalf of the petitioner in this case. And we appreciate your serving, sole serving. Excuse me? I said we appreciate your sole serving. You're quite welcome, Your Honors. The petitioner is here today along with his personal counsel, John Woo, who is with me at counsel's table, and who is available should the Court have any questions that he may be better equipped to address than I. What I would like to focus on today are what we believe are the two central issues before the Court. And before I just begin discussing those issues, may I please reserve two minutes for rebuttal? You certainly may, but keep track of your own time, please. Will do, Your Honor. The two central issues before the Court today are as follows. First, whether the temporary employment authorization that was extended to asylum applicants in 1992 when they filed their asylum applications, whether that temporary employment authorization was among the quote, unquote, benefits, such that if it was procured via a material misrepresentation would render an alien inadmissible. Why wouldn't it be a benefit? Your Honors, perhaps as a colloquial matter, it feels like a benefit. But the question is one that is one of statutory interpretation. And I think our position is best explained by looking at the relevant statute, which is 8 U.S.C. 1182, A6C1. I know it's somewhat buried in the statute. But what that statute provides is that a misrepresentation only renders an alien inadmissible if it was material to procuring one of four things, a visa, other documentation, admission into the United States, or an other benefit provided under this chapter. And by this chapter, it refers to the INA and its amendments. Putting aside for a moment whether the general categories of other documentation and other benefit provided under the Act are cabined or limited in some way by the specific examples that precede them, that is visa and admission into the United States. Even putting that aside for a moment and giving the statute the absolute broadest reading that it could support, which is that any benefit, privilege, right, et cetera, mentioned anywhere in the INA counts as a benefit. The simple fact is that in 1992, employment authorization for asylum applicants was not mentioned anywhere in the INA. It was simply not provided for by the statute. So as a straightforward merit of statutory construction, employment authorization for asylum applicants, the quote, unquote, benefit at issue here, was not provided for in the INA. What about the application for asylum? Excuse me? What about the application for asylum? The application for asylum, what the BIA's determination was, and it was very specific and I think it's important to keep in mind, what the BIA determined was that the Petitioner was inadmissible for making misrepresentations on his asylum application that were material not to procuring asylum, that was not what the BIA decided, but were material to procuring employment authorization. Right. So if the BIA had said he sought to procure asylum through it, we wouldn't be here, probably, right? Not necessarily, Your Honors. There are reasons, I think, why the BIA decided not to take that path, because there are complications. And if they had taken that route, there are some arguments that would be presented as to why that would also be a faulty finding, given that the ---- Why? Because he sought to procure an asylum application. Why wouldn't that fall within the language of the statute? Again, Your Honor, that wasn't what the BIA decided, but if it had been ---- I understand, but I ask you the question. Sure. The reason is that the Petitioner submitted his asylum application in 1992, submitted that application and was then granted his employment authorization. The timely retraction doctrine ---- In which he lied. In which he lied in many respects. There's no question about that, Your Honor, and our position is ---- And I don't see how you can say that it's irrelevant that he said he was from Somalia and was seeking asylum from Somalia, when, in fact, he's an Ethiopian, born in Ethiopia. Right. Your Honor, there's a doctrine called the timely retraction doctrine that applies in this context, which says that if misrepresentations made in an application are retracted in a timely manner, and that usually happens by not repeating them in an interview. The Petitioner was never interviewed on this asylum application. He never repeated those in an interview. And, in fact, he withdrew his asylum application before it was adjudicated, before he provided any testimony, any meaningful testimony before the immigration judge. So a real question remained, and again, I think that's why the BIA may have taken the route it did, as to whether those statements were timely retracted with regard to his asylum application. The timely retraction ---- The doctrine does, in fact, say that, Your Honor. If you retract it without, again, repeating it at an interview, et cetera, it serves to purge it completely from consideration as to grounds of inadmissibility. That is what the timely retraction doctrine says. And, again, if the question before the Court were whether these statements were material to procuring asylum, we would go down that route. But didn't he continue to testify falsely even after he withdrew the application for asylum? Your Honor, he did. And, again, as officers of the Court and as judicial officers ourselves, there's no question that conduct in this case was offensive to us. You know, any misrepresentations to a tribunal are exactly that. But the question before the Court is a question of law. It is not a question of the defendant's moral character. It is not a question of lies that may have been material to other things. The BIA's decision, and I think it's perhaps useful to take a look at it, was very clear in that it said the basis for inadmissibility that it found was statements in an asylum application being material to the procurement of employment authorization. If the statements were not material to procurement of employment authorization or if employment authorization was not a benefit under the Act or otherwise within the scope of Section C-1, then the BIA's determination cannot stand on its own reasoning, and the Court would be obligated to vacate that decision and remand for further proceedings. But also on the issue of the materiality of the statements, was that issue exhausted? Your Honor, we believe both issues were exhausted. And the reason is that the BIA rendered a specific legal determination about inadmissibility. And under several in-bank precedents of this Court, that is sufficient for exhaustion irrespective of whether the issues were discussed in detail in the Petitioner's briefs. The Abibi case from 2005, Stoke-Up Gonzales before that, those were very clear. Did the BIA discuss the materiality? Your Honor, not in great depth, but I think the decision of the BIA here is I guess somewhat akin to a memorandum disposition from this Court in which it identifies the basis for its decision. This is a one-member BIA decision. It identifies the basis for its decision, makes it clear for appellate purposes and otherwise precisely why it or what its determination was. But in order for it to be exhausted, the BIA must discuss it enough for us to garner the reasoning of the BIA. So what was the discussion about materiality that you think exhausted that issue? Your Honor, respectfully, I would suggest that that's not the standard. In Abibi, the 2005 in-bank case that I referred to, the BIA actually issued a Bourbon Affirmance with absolutely no reasoning whatsoever and simply said, we agree via a Bourbon Affirmance with the entire IJ's decision. But can you look back at the IJ decision to get the rationale for the BIA decision? So that's where you look to determine the extent of the discussion. So that's not really persuasive. Well, Your Honor, I think, again, because the BIA rendered a specific determination, it identified the statements and what they were material to. We can look behind that at the IJ's decision for explanation as to why the IJ found those willful, why they found those material, but can't go beyond that specific determination, which is statements on an asylum application material to procuring employment authorization. Any other discussion by the IJ as to inadmissibility is beyond the scope of what this it found to be the basis for its inadmissibility finding. So I think that that is, that sort of cabins where the Court can look in terms of what the IJ said. So, again, to quickly discuss the issue of the case. Kennedy, you're below two minutes. You indicated you wanted to reserve. Your choice. Your Honor, if I could just make one point with regards to the materiality issue. As to why we believe it's material, I think it's well discussed in our brief. But it's important that if Petitioner had told the truth on his application, he would have been submitting what we contend is a non-frivolous asylum application. And, therefore, he would have been granted employment authorization while the INS, now DHS, decided and weighed the facts and, you know, let it go through the system so it could determine whether he did, in fact, merit a grant of asylum. All that's at issue here, we believe, is whether he would have gotten that exact same employment authorization had he told the truth. And for the reasons discussed in our brief, we believe that he would have. So I will reserve my remaining 51 seconds.  Counsel, we'll hear from the government. Good morning, Your Honors. Good morning, Your Honors. May it please the Court. My name is Imran Zaydin. I represent the Attorney General. Your Honor, the issue before the Court today is whether the agency properly denied the applications for inadmissibility waiver and adjustment of status of the Petitioner. Now, in this case, the Court should uphold the agency's denial of these applications for two reasons. First, Petitioner never raised the issue of materiality before the Board, and, therefore, the Court lacks jurisdiction to review this unexhausted issue. What's your response to opposing counsel's observation that because the BIA discussed it, the material misrepresentations in its decision that it's adequately exhausted? Well, Your Honor, I would respond with the suggestion you made, which is that in order to adequately discuss it, you must be able to garner some reasoning from the Board's decision. In this case, we submit that the Board merely restated the immigration judge's finding regarding materiality in the context of the Board's discussion of the inadmissibility waiver. They did no analysis. By Petitioner's own admission, the Board conducted the Board did not conduct a materiality analysis in this case, the fair inference analysis. Your Honor, the second reason the Board, the Court should So what case says that? What case says that the BIA must include adequate discussion? Where are you getting that, other than from what I said? Well, Your Honor, in the, in the Abebe case, in the first Abebe case, in the Abebe on Bonk 2005 case, which was an adopt and affirm, the Court said in that case that it could only rely on the immigration judge's opinion there for the discussion for the garnering of reasoning if it was an adopt and affirm. Otherwise, the Court must give the Board must give something more for the Court to glean for its reasoning. Now, Your Honor, the second reason the Court should uphold the agency's decision is even should the Court assume jurisdiction over the issue of materiality, Petitioner's misrepresentations here were material as well as willful and for the purpose of obtaining an immigration benefit. Therefore, Petitioner was statutorily inadmissible and required an inadmissibility waiver to pursue adjustment of status. What's your response to opposing counsel's representation that the misrepresentations were not material because the employment authorization would have been granted if the truth had been told? Well, Your Honor, as a preliminary matter, are you getting materiality, Your Honor? Right. She said it wasn't material because it wouldn't have made a difference if he had told the truth, the same authorization would have been granted. Sure. What's your response? Sure. Your Honor, well, as I already said, as a preliminary matter, materiality was never addressed, ever raised before the Board. Right. But if we assume that it was adequately exhausted and we get to the merits of it, what's your response? Assuming jurisdiction, Your Honor, under this Court's jurisprudence, materiality is demonstrated if there's a fair inference that under the true facts, the applicant would be ineligible for the relevant benefit. So in this case, Your Honor, assuming that the relevant benefit is the employment authorization, the question then becomes would Petitioner have been able to obtain that employment authorization, which requires a nonfrivolous asylum application. Now, Your Honors, it's important to note that in this case, the only persecution evidence that has been submitted was Petitioner's original false asylum application. There's no other indication that Petitioner has a fear, any fear of persecution, let alone a well-founded fear. But for the work authorization, whether he said Ethiopia or Somalia, just on that narrow issue, it would have made no difference, would it? Well, no, Your Honor, because in this case, absent any other evidence of persecution, we submit that it would have been a frivolous asylum application. Oh, you think if he said Ethiopia, they would have said it's a frivolous – nobody ever is persecuted in Ethiopia, so it's a frivolous application, and therefore, we don't even have to consider work authorization? Well, no, Your Honor, we're submitting that because the actual truth of the application here would be that Petitioner only submitted, as he admitted in his testimony several times, he only filed his asylum application for the purpose of obtaining a work authorization. And because the regulations define frivolous as manifestly unfounded or abusive, that the truth of this asylum application is that he was only filing it for the purpose of obtaining this ulterior benefit. That would be by definition frivolous. So your argument is he put Somalia because he knew if he had put Ethiopia, it would have been a frivolous application and he would not have been entitled to the employment authorization. Is that your argument? It's kind of the argument, Your Honor. The argument is actually – the argument is actually that because he filed his asylum application solely for the purpose of obtaining the immigration benefit, that by definition was frivolous. Now, in the alternative, getting to your issue about if he had put Ethiopia, the evidence, as I already said here, Your Honor, does not demonstrate that there is any fear of persecution in Ethiopia. In fact, this lack of evidence is reflected by Petitioner's attempt to string together an asylum claim using various agency findings and inferences. Specifically, Petitioner contends that because his brother was born in Ethiopia, moved to Djibouti at a young age, and then eventually successfully obtained asylum in the United States, that Petitioner would have been similarly successful because his life had a similar trajectory. Your Honor, that's not how the agency adjudicates asylum applications. Under 1158b1bi, a Petitioner – an applicant must demonstrate that he or she specifically has a well-founded fear of persecution based on a well-founded fear, based on a protected ground. Excuse me. Does the record show that the brother got asylum based on a well-grounded fear? Your Honor, the record merely shows through his brother's testimony and nothing else that the brother obtained asylum. And so in this Court, given this lack of persecution evidence and the string of analysis that Petitioner has put together in order to assert a successful asylum claim from what we can glean, there's no evidence.  in Ethiopia. So it would have been a frivolous asylum application for that reason as well. Now, Your Honor, should the Court address the issues raised in Petitioner's opening brief regarding ineffective assistance of counsel, which Petitioner appears to have abandoned, perhaps, should first note that there was absolutely no compliance in this case with matter of Lozada. There was no affidavit submitted detailing an agreement between the attorney and Petitioner. There was no notice given to the attorney or an opportunity to respond, nor was there a complaint filed with the disciplinary authority. Now, Ninth Circuit jurisprudence excuses strict compliance in situations where the record shows on its face ineffective assistance of counsel, where it's indisputed and obvious. In this case, there is nothing obvious about the ineffective assistance of counsel. In fact, according to the record, the only mistake that counsel has made was not changing the birth country on Petitioner's asylum application, which became moot once Petitioner, on March 30, 2005, disavowed all of his prior testimony and claimed that his asylum application completely was false, that he was not born in Somalia, that he did not experience persecution in Somalia, that he had never, indeed, even been to Somalia. Your Honors, because the issue of materiality was never raised before the Board, and because the Board, therefore, never conducted any materiality analysis in this case, and because even should the Court assert jurisdiction over that issue, there is no question that Petitioner materially misrepresented himself and willfully misrepresented himself and obtained two separate immigration benefits, we submit that this Court dismiss in part and deny in part the petition for review. Kagan. Kennedy. You mentioned two. Besides the temporary work authorization, what was the other one? Yes, Your Honor. As Judge Rollinson already suggested, the asylum application was ultimately the underlying relief that Petitioner sought in this case. He filed his asylum application in 1992. That application remained pending for 13 years before he withdrew it. In his own testimony, he claimed that he fabricated his asylum claim as being from Somalia for the purpose of obtaining a better asylum claim, and he only withdrew it in 2005 after the avenue of adjustment of the status became available. Therefore, the material misrepresented asylum claim and the testimony in support of that application were for the purpose both of obtaining asylum and for the purpose of obtaining the work authorization. They did not designate that as being the basis for the material misrepresentation. Well, Your Honor, the Board never – the Board merely stated – excuse me – the Board stated that we find no clear error in the immigration judge's finding that the Respondent has repeatedly made willful misrepresentations of material facts. The Respondent has worked in the United States for over a decade with a permit he obtained by making willful and material misrepresentations on a 1992 asylum application. This analysis was not meant to be exhaustive, nor was it meant to indicate the only immigration benefit that Petitioner received in this case. Well, but it never discussed the asylum application, which normally we see that in the decision, if that's the intent. And the only specific reference was to the permit he obtained by making willful and material misrepresentations. Well, that's true, Your Honor, but in this case, we submit that the Board didn't address it because the issue of whether or not that was the relief, that was the immigration benefit that Petitioner sought, was never at any point addressed in his brief before the Board. Yeah, it was withdrawn, so I can understand why the BIA wouldn't address it if it was withdrawn. Exactly. Because it did create some complications. Yes, Your Honor. Could you just briefly, for the record, state your position on whether or not we have jurisdiction to review the denial of voluntary departure and the motion to remand? Yes, Your Honor. The motion to remand specifically – excuse me. Did I turn this off? Sorry. The motion to remand, this Court does not have jurisdiction to review that because it's based on the exact same adjustment information that Petitioner submitted in support of his first adjustment of status application. And as far as voluntary departure, Your Honor, this Court similarly lacks jurisdiction to review because of the discretionary decision of the Board. All right. If there's no further questions, Your Honor. No, thank you, counsel. We'll hear from Ms. Davis. Ms. Davis, you have less than a minute. Your Honors, I'd like to make several quick points in response. First, the record is clear. The Petitioner's brother and his sister did receive asylum based on the conditions that his family faced in Ethiopia. So certainly his asylum application would have been non-frivolous. Second of all, to consider the issues raised in my amicus briefs, unexhausted would be to go against several in-bank decisions that I don't think this Court has authority to disregard. With regard to the really — Is Abebe one of them? Excuse me? Is Abebe one of them? Abebe, the 2005 version, yes. And finally, with respect to Judge Raulston just mentioned the motion to remand, if the Court agrees with our position as to the BIA's inadmissibility determination being incorrect in how it ruled, the Court would also have jurisdiction to conclude that the motion to remand, which was denied for the exact same reasons, meaning he was, again, inadmissible as a threshold matter. If they were incorrect in finding him inadmissible as a threshold matter there, they also would have been incorrect with regards to the motion to remand, and that would no longer be supportable. So again, what we are asking the Court for is a remand to the BIA on the grounds that its inadmissibility determination was not proper and that the reasoning cannot stand. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted for decision.
judges: O'scannlain, Rawlinson, Bea